James M. Wagstaffe (#95535)
Frank Busch (#258288)
**WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff*
*Oklahoma City Employee Retirement System and*
*Police Retirement System of St. Louis and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DOHERTY, Individually and On Behalf of All Others Similarly Situated,<br><br>                    Plaintiff,<br><br>        v.<br><br>PIVOTAL SOFTWARE, INC., ROBERT MEE, and CYNTHIA GAYLOR,<br><br>                    Defendants., | Case No. 3:19-cv-03589-CRB<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF OKLAHOMA CITY EMPLOYEE RETIREMENT SYSTEM AND POLICE RETIREMENT SYSTEM OF ST. LOUIS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; AND IN OPPOSITION TO COMPETING MOVANTS**<br><br>**Date:** September 27, 2019<br>**Time:** 10:00 a.m.<br>**Courtroom:** 6 – 17th Floor<br>**Judge:** Charles R. Breyer |

*Caption continues on following page…*

MEMORANDUM OF LAW IN FURTHER SUPPORT; AND IN OPPOSITION TO COMPETING MOVANTS
CASE NO. 3:19-cv-03589-CRB

MIKEBEB M. ABERA, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

PIVOTAL SOFTWARE, INC.; ROBERT MEE; CYNTHIA GAYLOR; PAUL MARITZ; MICHAEL S. DELL; ZANE ROWE; EGON DURBAN; WILLIAM D. GREEN; MARCY S. KLEVORN; KHOZEMA Z. SHIPCHANDLER; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED; BARCLAYS CAPITAL INC.; CREDIT SUISSE SECURITIES (USA) LLC; RBC CAPITAL MARKETS, LLC; UBS SECURITIES LLC; WELLS FARGO SECURITIES, LLC; KEYBANC CAPITAL MARKETS INC.; WILLIAM BLAIR & COMPANY, LLC; MISCHLER FINANCIAL GROUP, INC.; SAMUEL A. RAMIREZ & COMPANY, INC.; SIEBERT CISNEROS SHANK & CO.; LLC; and WILLIAMS CAPITAL GROUP, L.P.,

Defendants.

Case No. 4:19-cv-03601-HSG

Judge Haywood S. Gilliam, Jr.

PETER KLEINMAN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

vs.

PIVOTAL SOFTWARE, INC.; ROBERT MEE; CYNTHIA GAYLOR; PAUL MARITZ; MICHAEL S. DELL; ZANE ROWE; EGON DURBAN; WILLIAM D. GREEN; MARCY S. KLEVORN; KHOZEMA Z. SHIPCHANDLER; MORGAN STANLEY & CO. LLC; GOLDMAN SACHS & CO. LLC; CITIGROUP GLOBAL MARKETS INC.; MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED.; BARCLAYS CAPITAL INC.; CREDIT SUISSE SECURITIES (USA) LLC; RBC CAPITAL MARKETS, LLC; UBS SECURITIES LLC; WELLS FARGO SECURITIES, LLC; KEYBANC CAPITAL MARKETS INC.; WILLIAM BLAIR & COMPANY, L.L.C.; MISCHLER FINANCIAL GROUP, INC.;

Case No. 3:19-cv-03605-RS

Judge Richard Seeborg

SAMUEL A. RAMIREZ & COMPANY, INC.;
SIEBERT CISNEROS SHANK & CO., L.L.C.;
and WILLIAMS CAPITAL GROUP, L.P.,

                    Defendants.

## **TABLE OF CONTENTS**

SUMMARY OF ARGUMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.      The Pivotal Investor Group Is Unfit to Serve as Lead Plaintiff Both
        Collectively and Individually.......................................................................................... 2

        A.      The Pivotal Investor Group Is not a "Group" Within the Meaning
                of the PSLRA ........................................................................................................ 2

        B.      Neither Member of the Pivotal Investor Group Has Standing to
                Pursue the Securities Act Claims ...................................................................... 5

        C.      Doherty Is Individually Inadequate and Atypical .................................................... 7

                1.      Doherty Has Failed to Comply with the Strict Terms of the
                        PSLRA by Submitting Conflicting Certifications ...................................... 7

                2.      Doherty's Frenetic and Voluminous Trading Record
                        Renders Him Atypical........................................................................... 9

                3.      Doherty Is Additionally Subject to Unique Defenses by
                        Virtue of His Employment at EMC ......................................................... 11

        D.      Tech Trader Is Individually Unfit for the Role of Lead Plaintiff ........................ 12

        E.      Limited Discovery Is Warranted to Clarify the Issues Plaguing the
                Pivotal Investor Group ........................................................................................ 13

II.     OKCERS and St. Louis Police Are the Presumptive Lead Plaintiff.............................. 14

CONCLUSION ....................................................................................................................... 16

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Anderson v. Bank of The South, N.A.*,
118 F.R.D. 136 (M.D. Fla. 1987)........................................................................................11, 12

*Andrade v. Am. Apparel, Inc.*,
No. CV 10-06352 MMM, 2011 WL 13131110 (C.D. Cal. Jan. 21, 2011)............................14

*Applestein v. Medivation Inc*,
No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)........................9, 10, 14

*In re Aqua Metals Sec. Litig.*,
No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ...................................5

*Basic v. Levinson*,
485 U.S. 224 (1988)................................................................................................................9

*Bodri v. Gopro, Inc.*,
No. 16-cv-00232-JST, 2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) .................................3, 4

*Camp v. Qualcomm Inc.*,
No. 18-cv-1208-AJB-BLM, 2019 WL 277360 (S.D. Cal. Jan. 22, 2019)................................8

*Carson v. Clarent Corp.*,
No. C 01-03361 CRB, 2001 WL 1782712 (N.D. Cal. Dec. 14, 2001) .....................................3

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................................................14

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ...................................15

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ........................10

*In re Conseco, Inc. Sec. Litig.*,
120 F. Supp. 2d 729 (S.D. Ind. 2000) ...................................................................................13

*Dura Pharm. Inc. v. Broudo*,
544 U.S. 336 (2005)..............................................................................................................10

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)...................................10

*Endo v. Albertine*,
147 F.R.D. 164 (N.D. Ill. 1993)............................................................................................12

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002)................................................................................11, 12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)...........................................................................................10

*Galmi v. Teva Pharm. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017)...........................................................................10

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
   209 F.R.D. 447 (C.D. Cal. 2002) ....................................................................................4

*Harris v. Vector Mktg. Corp.*,
   753 F. Supp. 2d 996 (N.D. Cal. 2010) .............................................................................8

*In re HealthSouth Corp. Sec. Litig.*,
   213 F.R.D. 447 (N.D. Ala. 2003)...................................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
   227 F.R.D. 65 (S.D.N.Y. 2004), *vacated on other grounds*, 471 F.3d 24 (2d
   Cir. 2006) .......................................................................................................................5, 6

*In re Intercloud Sys., Inc. Sec. Litig.*,
   No. 14-cv-01982 (D.N.J. Nov. 4, 2014) ........................................................................13

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*,
   No. 14 CIV. 10020 RMB, 2015 WL 1345931 (S.D.N.Y. Mar. 19, 2015) ...............................9

*Kelley v. Rambus, Inc.*,
   No. C 07-1238.....................................................................................................................9

*Khunt v. Alibaba Grp. Holding Ltd.*,
   102 F. Supp. 3d 523 (S.D.N.Y. 2015)...............................................................................8

*In re Lendingclub Sec. Litig.*,
   282 F. Supp. 3d 1171 (N.D. Cal. 2017) ...........................................................................6

*Marcus v. J.C. Penney Co.*,
   No. 6:13-CV-736, 2014 WL 11394911 (E.D. Tex. Feb. 28, 2014)....................................10

*In re Microstrategy Sec. Litig.*,
   110 F. Supp. 2d 427 (E.D. Va. 2000) ..............................................................................13

*Nasin v. Hongli Clean Energy Techs. Corp.*,
   No. 2:17-3244 (WJM), 2017 WL 5598214 (D.N.J. Nov. 21, 2017)....................................8

*In re Network Assocs., Inc. Sec. Litig.*,
   76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................14

*Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*,
   No. 4:17-CV-00449, 2017 WL 3780164 (E.D. Tex. Aug. 31, 2017)....................................4

*Olsen v. New York Cmty. Bancorp, Inc.*,
   233 F.R.D. 101 (E.D.N.Y. 2005) ..................................................................................7

*In re Peregrine Sys., Inc. Sec. Litig.*,
   No. Civ. 02CV870-J(RBB), 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ...........................7

*Prissert v. Emcore Corp.*,
   No. 08-1190, 2009 WL 10668530 (D.N.M. Sept. 29, 2009) ...................................................14

*In re Quarterdeck Office Sys., Inc. Sec. Litig.*,
   No. CV 92-3970-DWW(GHKx), 1993 WL 623310 (C.D. Cal. Sept. 30, 1993).......................7

*In re Quintus Sec. Litig.*,
   201 F.R.D. 475 (N.D. Cal. 2001)..................................................................................7

*Ross v. Abercrombie & Fitch Co.*,
   No. 2:05-CV-819, 2007 WL 895073 (S.D. Ohio Mar. 22, 2007)..............................................4

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   219 F.R.D. 343 (D. Md. 2003)..................................................................................3

*Rubke v. Capitol Bancorp*,
   No. C 054-800 PJH, 2006 WL 734390 (N.D. Cal. Mar. 21, 2006) ...........................................3

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015)........................................................................10

*Smajlaj v. Brocade Commc'ns Sys. Inc.*,
   No. C 05-02042 CRB, 2006 WL 7348107 (N.D. Cal. Jan. 12, 2006) .............................1, 3, 13

*In re Tarragon Corp. Sec. Litig.*,
   No. 07 CIV 7972, 2007 WL 4302732 (S.D.N.Y. Dec. 6, 2007)...............................................4

*Tomaszewski v. Trevena, Inc.*,
   383 F. Supp. 3d 409 (E.D. Pa. 2019) .......................................................................8, 9

*Tsirekidze v. Syntax-Brillian Corp.*,
   No. CV-07-2204-PHX-FJM, 2008 WL 942273 (D. Ariz. Apr. 7, 2008) .................................9

**Rules & Statutes**

Fed. R. Civ. P. 23.................................................................................1, 14, 15, 16

15 U.S.C. § 78u-4 *et seq.* ............................................................................... *passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369, *reprinted in* 1995 U.S.C.C.A.N. 730 ..........................................1

S. Rep. No. 104-98, *reprinted in* 1995 U.S.C.C.A.N. 679 ............................................................3

OKCERS and St. Louis Police respectfully submit this memorandum in further support of their motion for consolidation of the above-captioned actions, appointment as Lead Plaintiff, and approval of Labaton Sucharow as Lead Counsel and WVBR LLP as Liaison Counsel for the Class[1] (ECF No. 21), and in opposition to all competing lead plaintiff motions.[2]

**SUMMARY OF ARGUMENT**

OKCERS and St. Louis Police, two sophisticated institutional investors, who outside of the Pivotal Investor Group are currently unopposed for appointment as Lead Plaintiff, have the largest financial interest and standing to pursue all claims alleged in the Action, while also satisfying both the adequacy and typicality requirements of Rule 23. Under the "sequential" lead plaintiff process adopted by this Circuit, they are the presumptive Lead Plaintiff and entitled to appointment. While the self-proclaimed "Pivotal Investor Group" claims a lager loss, the evidence submitted by its members with their Lead Plaintiff motion indicates that they have no pre-existing relationship, are unaware of each other, and that they were grouped by their counsel for the sole purpose of securing a leadership role in this action. Because the Pivotal Investor Group has failed to present any *prima facie* evidence in their Lead Plaintiff motion as to their ability to communicate and coordinate litigation strategy, resolve intra-group disputes, or manage counsel, it is not a "group" within the meaning of the PSLRA. *See Smajlaj v. Brocade Commc'ns Sys. Inc.*, No. C 05-02042 CRB, 2006 WL 7348107, at *3 (N.D. Cal. Jan. 12, 2006).

Terminal challenges to the Pivotal Investor Group's adequacy and typicality independently mandate denial of their motion. Neither group member has standing to pursue the Securities Act claims alleged in the Action,[3] subjecting them to unique defenses. Doherty has

---

[1] All definitions and abbreviations used herein remain unchanged from OKCERS' and St. Louis Police's previous submission before this Court. *See* ECF No. 21.

[2] The other lead plaintiff motions were filed by: (1) Steven Doherty ("Doherty") and Tech Trader Fund LP ("Tech Trader") (together with Doherty, the "Pivotal Investor Group") (ECF No. 29); (2) Vasant Punjabi ("Punjabi") (ECF No. 11); (3) Mary Anderson ("Anderson") (ECF No. 16); and (4) Dana Penza (ECF No. 7). Penza's motion was subsequently withdrawn on August 28, 2019. *See* ECF No. 35. Punjabi's and Anderson's motions were subsequently withdrawn on September 3, 2019. *See* ECF Nos. 36, 37.

[3] The Securities Act claims are brought on behalf of a class consisting of all purchasers other than Defendants who purchased Pivotal securities pursuant and/or traceable to the registration statement and prospectus issued in connection with the Company's April 2018 IPO.

demonstrated a total lack of credibility necessary for the role of lead plaintiff by filing two *entirely distinct* sets of transactions attached to the *same* certification signed under the penalty of perjury (*compare* certification filed with initial complaint, ECF Nos. 1-1, 1-2, *with* certification filed with lead plaintiff motion, ECF No. 30-3), which does not even expressly consent to the filing of his lead plaintiff motion.  Further, Doherty's frenetic trading precludes him from invoking the fraud on the market presumption of reliance—the bedrock of class certification in securities class actions—and therefore subjects him to unique defenses rendering him atypical to the Class.  Counsel's investigation has also revealed that Doherty's employment at Dell EMC, a controlling shareholder and strategic partner of Pivotal, subjects him to a morass of potential unnecessary conflicts.  Finally, Tech Trader, a self-described "Fully Autonomous Hedge Fund with No Human Intervention," is atypical based on its status as a closed-end, black box trading platform, the sole creator of which "has long moved on to other interests."

In sharp contrast, OKCERS and St. Louis Police are precisely the type of sophisticated institutional investors that Congress intended to empower to lead securities class actions.  Both institutions fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action.  The Court must not entrust leadership of the Action to a lawyer-driven group of disinterested, inadequate, and atypical investors who are unaware of each other and have submitted no evidence with their motion as to their identify and ability to lead this litigation.

## ARGUMENT

**I.    The Pivotal Investor Group Is Unfit to Serve as Lead Plaintiff Both Collectively and Individually**

### A.    The Pivotal Investor Group Is not a "Group" Within the Meaning of the PSLRA

The Pivotal Investor Group is a lawyer-driven assemblage that contravenes the core mission of PSLRA to place the "selection" of counsel and control of litigation in the hands of investors that will competently oversee the litigation.  Indeed, *all* of the scant evidence submitted by the Pivotal Investor Group suggests that its members have no pre-existing relationship, are

unaware of each other, and that they were selected and improperly grouped by their counsel for the sole purpose of securing a leadership role in this action.  These facts lead to one inescapable conclusion that this Court has reached under similar circumstances: the Pivotal Investor Group is not a "group" within the meaning of the PSLRA.  *See Brocade Commc'ns Sys. Inc.*, 2006 WL 7348107, at *3 (finding that "a group of two unrelated individuals" did not "qualify as a 'group' under the PSLRA").

The PSLRA's statutory mechanism requires each lead plaintiff applicant to present *prima facie* evidence that they engaged in the "selection" of lead counsel, as opposed to being selected by counsel.  *See, e.g., Rubke v. Capitol Bancorp*, No. C 054-800 PJH, 2006 WL 734390, at *5 (N.D. Cal. Mar. 21, 2006) ("However, neither plaintiffs nor Trevor submitted any information about ***the process the plaintiffs used to select counsel*** . . . .  At the hearing, the court noted that this information was required to ensure that [their]'s choices were objectively adequate.  The court advised plaintiffs that it would approve their choice of counsel ***after they demonstrated that their choice resulted from good faith selection and negotiation***.") (emphasis added);  *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 219 F.R.D. 343, 350 (D. Md. 2003).

Courts within the Ninth Circuit and elsewhere, including this Court, have consistently rejected as inadequate lead plaintiff movants whose *prima facie* evidence shows telltales that they abdicated their core statutory responsibility to "select" lead counsel and instead, allowed proposed lead counsel to select and aggregate the lead plaintiff group based solely on their financial interest in the action.  S. Rep. No. 104-98, at 11-12, *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("This provision is intended to permit the plaintiff to choose counsel rather than have counsel choose the plaintiff."); *see also Carson v. Clarent Corp.*, No. C 01-03361 CRB, 2001 WL 1782712, at *2 (N.D. Cal. Dec. 14, 2001) ("Lauren Associates and Stanley Tomchin are not related and have not come forward with any explanation as to why they should be treated together and the Court declines to do so.").  These telltales of lawyer-driven litigation are plainly evident here, where the unrelated investors that comprise the Pivotal Investor Group have been banded together without justification.  *See, e.g.*, *Bodri v. Gopro, Inc.*, No. 16-cv-00232-JST, 2016 WL 1718217, at *4 (N.D. Cal. Apr. 28, 2016) ("Northern District of California courts have

generally found that appointing a group of unrelated investors undercuts the primary purpose of the PSLRA: to eliminate lawyer-driven litigation."); *see also In re Tarragon Corp. Sec. Litig.*, No. 07 CIV 7972, 2007 WL 4302732, at \*1-2 (S.D.N.Y. Dec. 6, 2007) (collecting cases").

The Pivotal Investor Group has submitted *no accompanying proof* in its motion that Tech Trader, a San Francisco-based "Fully Autonomous Hedge Fund with No Human Intervention,"[4] and Doherty, an unknown individual investor, have any connection or have ever even communicated.[5]  Their counsel's uncorroborated assertion that that "the Pivotal Investor Group is willing to serve as a representative for the Class" provides the only link between Doherty and Tech Trader, highlighting the very lawyer-driven origins of the Pivotal Investor Group.  *See* ECF No. 29 at 8.  Further, counsel's careful choice of words also conceals a deeply troubling fact: Doherty's certification does not explicitly consent to the filing of a lead plaintiff motion.  Doherty's certification has been recycled from his first certification filed with the initial complaint, signed under penalty of perjury.  *See* Section I.C.1.  The later certification, filed in connection with the Pivotal Investor Group's motion, is the *same* certification submitted with the initial complaint, but with different transactions.  Nowhere does this certification authorize the filings of a lead plaintiff motion, stating only that Doherty is "willing to serve as a representative party on behalf of the class," mirroring the carefully chosen words of his counsel in their motion.

Further, the Pivotal Investor Group has failed to provide in its motion *any information* related to how it will communicate and coordinate litigation strategy, resolve intra-group disputes, or manage counsel.  Because it has not submitted *any* evidence in its motion as to "how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and the mechanism by which the group members and counsel would communicate with one another about the litigation," its motion should be denied.  *Okla. Law Enf't Ret. Sys. v. Adeptus Health Inc.*, No. 4:17-CV-00449, 2017 WL 3780164, at \*5 (E.D. Tex. Aug. 31, 2017) (discussing requirements for unrelated groups).

---

[4]  *Tech Trader*, TECH TRADER, https://www.techtrader.ai/ (last visited Sept. 3, 2019).
[5]  *See, e.g.*, *Ross v. Abercrombie & Fitch Co.*, No. 2:05-CV-819, 2007 WL 895073, at \*4 (S.D. Ohio Mar. 22, 2007) (denying lead plaintiff movant where unrelated group failed to submit joint declaration).

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002).  In short, the Pivotal Investor Group has failed to make a *prima facie* showing that it is a "group" within the meaning of the PSLRA.

In contrast, OKCERS and St. Louis Police, two sophisticated municipal funds, have amply satisfied this requirement by submitting an accompanying joint declaration with their motion (ECF No. 22-4), attesting to: (1) their understanding of the requirements and duties of a lead plaintiff under the PSLRA, (2) their belief that the case should be prosecuted as a group with standing to pursue **both** the Securities Act and Exchange Act claims alleged in the Action, (3) their independent decision to seek appointment as Lead Plaintiff and desire to jointly prosecute the Action, (4) the measures they have taken to discuss joint prosecution of the Action, with or without counsel, (5) their selection of proposed Lead Counsel, and (6) the mechanism for resolving potential disagreements.  *See In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (appointing group of investors based off of joint declaration which set forth decision-making and communication procedures, as well as a stated commitment to participate in litigation).  Consistent with these responsibilities and in furtherance of their fiduciary duty to the Class, representatives from OKCERS and St. Louis Police are available at the Court's request to answer any additional questions the Court may have.

> **B.      Neither Member of the Pivotal Investor Group Has Standing to Pursue the Securities Act Claims**

The PSLRA requires courts to consider whether a proposed lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff atypical and incapable of adequately representing the class."  § 78u-4(a)(3)(B)(iii)(II).  Here, neither Doherty nor Tech Trader purchased Pivotal shares traceable to the Registration Statement and held through the final disclosure, and therefore lack standing to pursue the Securities Act claims alleged in the Action.  *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. 65, 120 (S.D.N.Y. 2004), *vacated on other grounds*, 471 F.3d 24 (2d Cir. 2006) ("A class representative's lack of standing under section 11 qualifies as a 'unique defense'

sufficient to defeat the typicality of a proposed class representative.").

To explain, on April 17, 2018, Pivotal issued 19,415,075 unregistered shares of its Class A common stock to GE International Holdings B.V. ("GE") in connection with the conversion of its Class B and Class C preferred stock.  Then, during Pivotal's IPO, GE registered and sold 3,883,000 of its pre-IPO Class A shares.  The balance of GE's unregistered 15,532,075 shares were "restricted" and subject to a 180 day lock up provision. As disclosed in the Registration Statement, those 15,532,075 unregistered shares could be traded after the expiration of the lock up "only if registered or if they qualify for an exemption from registration under Rule 144." Rule 144 provides an exemption from registration requirements to sell the securities of an issuer through public markets if a number of specific conditions are met. *See* 17 CFR § 230.144.

According to public SEC filings, GE sold 9,836,521 ***unregistered*** shares of Pivotal on November 6, 2018, in a transaction effected pursuant to Rule 144.  Thus, on that date, unregistered shares amounting to nearly 25 percent of the Class A common stock then in circulation, entered the secondary market.  GE sold its remaining 5,695,554 unregistered shares pursuant to Rule 144 on December 12, 2018.  Given these facts, Defendants will undoubtedly focus substantial time and effort in attacking the standing of both Doherty and Tech Trader to pursue Securities Act claims, as it appears neither can show that their shares are traceable to the Registration Statement.  *See* SECURITIES AND FEDERAL CORPORATE LAW § 16:119.20 (2d ed.) ("[I]t may not be long before some of the locked-up shares and those not locked-up enter the market in Rule 144 transactions.  Once that occurs, it may not be possible to distinguish them."); *see also In re Initial Pub. Offering Sec. Litig.*, 227 F.R.D. at 120 (limiting class periods to time between each IPO and the time when unregistered shares entered the market).[6]

Specifically, Doherty, as a day trader, sold ***all*** of his Pivotal stock multiple times subsequent to November 6, 2018, and an analysis of his trading shows that he held ***no shares*** exclusively traceable to the Registration Statement as of November 2, 2018.  *See* Chart of

---

[6] *See also In re Lendingclub Sec. Litig.*, 282 F. Supp. 3d 1171, 1179–81 (N.D. Cal. 2017) ("[I]f there is a mixture of pre-registration stock and stock sold under the misleading registration statement, a plaintiff must either show that he purchased his stock in the initial offering or trace his later-purchased stock back to the [IPO].'").

Doherty's Class Period Holdings, Wagstaffe Decl. Ex. A.  Similarly, Tech Trader's single transaction on the final day of the Class Period undoubtedly occurred after the November 6, 2018 cut-off date.  *See*  ECF No. 30-3.  Thus, both are faced with serious challenges to their standing to bring Securities Act claims, and are therefore inadequate and atypical.  *See In re Quarterdeck Office Sys., Inc. Sec. Litig.*, No. CV 92-3970-DWW(GHKx), 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) ("Plaintiffs' lack of standing to bring the § 11 claim indicates that their claims are not typical [or adequate]."); *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 489 (N.D. Cal. 2001). In contrast, unlike the members of the Pivotal Investor Group, OKCERS and St. Louis Police collectively purchased and held shares traceable to the Registration Statement through the end of the Class Period.  *See In re Peregrine Sys., Inc. Sec. Litig.*, No. Civ. 02CV870-J(RBB), 2002 WL 32769239, at *11–12 (S.D. Cal. Oct. 11, 2002) (appointing "co-lead plaintiffs, one to lead litigation with respect to the section 11 [of the Securities Act of 1933] plaintiffs and another to lead litigation with respect to the section 10(b) [of the Securities Exchange Act of 1934] plaintiffs"); *Olsen v. New York Cmty. Bancorp, Inc.*, 233 F.R.D. 101, 108 (E.D.N.Y. 2005).

### C.    Doherty Is Individually Inadequate and Atypical

#### 1.    Doherty Has Failed to Comply with the Strict Terms of the PSLRA by Submitting Conflicting Certifications

Fatal inconsistencies in Doherty's PSLRA certifications render him unfit for the role of Lead Plaintiff.  Pursuant to the procedural requirements of the PSLRA, "[e]ach plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification . . ., that [*inter alia*] . . . sets forth *all of the transactions of the plaintiff* in the security that is the subject of the complaint during the class period . . . ."  15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added).  This mandatory certification must either accompany the initial complaint, or be filed within the PSLRA's 60-day deadline.  § 78u-4(a)(2)(A), (a)(3).  For the reasons discussed herein, Doherty's failure to comply with the PSLRA's strict disclosure requirements is disqualifying.

In the course of this litigation, Doherty has twice-filed the same PSLRA certification dated June 12, 2019: once in connection with his complaint (ECF Nos. 1-1, 1-2), and once in connection with his lead plaintiff motion (ECF No. 30-3).  The trading data submitted in

connection with Doherty's certifications, however, is vastly different. Specifically, the certification filed in connection with his complaint lists approximately 25 transactions beginning on April 1, 2019, and the certification filed in connection with his lead plaintiff motion lists nearly **400** transactions beginning back in **April 20, 2018**.[7] While numerous excuses may be invented to explain the conflicting trading data, one unmistakable truth remains—one of Doherty's certifications is false and Doherty never attempted to correct his "oversight" in the 60-day PSLRA notice period. Instead, Doherty simply reported well-over three hundred additional transactions attached to an identical certification. Tellingly, when analyzing Doherty's loss under his initial certification, his financial interest shrinks dramatically to *$112,000*.

Doherty's inconsistent certifications are not a "minor or inadvertent mistake[]" but instead represent the submission of false and/or incomplete transaction data before the Court. *Cf. Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538–39 (S.D.N.Y. 2015) ("[M]inor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement."). Because Doherty has twice submitted the *same* certification personally attesting each time that "under penalty of perjury" it contained "all of [his] transactions in Pivotal securities during the Class Period as specified in the Complaint," Doherty's actions in this very litigation have demonstrated a total lack of credibility necessary for the role of lead plaintiff. *See Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996, 1015 (N.D. Cal. 2010). Further, because at least one of Doherty's certifications is unquestionably "deficient," it would thus subject the Pivotal Investor Group "to a unique defense that renders [it] 'incapable of adequately representing the class,' and, as a result" its motion should be denied in the entirety. *Nasin v. Hongli Clean Energy Techs. Corp.*, No. 2:17-3244 (WJM), 2017 WL 5598214, at *3–4 (D.N.J. Nov. 21, 2017) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)).

Courts in this Circuit have routinely rejected lead plaintiff applicants for similar transgressions. *See, e.g.*, *Camp v. Qualcomm Inc.*, No. 18-cv-1208-AJB-BLM, 2019 WL 277360, at *3–4 (S.D. Cal. Jan. 22, 2019) (denying lead plaintiff motion for "significant errors in

---

[7] The original noticed-class period in the Doherty Action was April 24, 2018 through June 4, 2019, inclusive. Therefore, Doherty still failed to account for hundreds of transactions in his initial certification.

the transaction records and loss calculations"); *Tomaszewski v. Trevena, Inc.*, 383 F. Supp. 3d 409, 414–15 (E.D. Pa. 2019) (finding that errors in sworn statements "speak to a level of carelessness," and "cause[d] the Court to doubt whether [movant] possesse[d] the necessary adequacy and sophistication to be lead plaintiff").[8]  Based off of Doherty's demonstrated lack of credibility, his motion, both individually and collectively, should be denied.

### 2.    Doherty's Frenetic and Voluminous Trading Record Renders Him Atypical

Doherty is also not a typical investor.  His trading is akin to that of a day trader, one who excessively engages in intraday purchases and sales to capture favorable price fluctuations regardless of the Company-specific information disseminated to the market.  This frantic trading strategy, therefore, injects serious doubt as to whether Doherty could invoke the fraud on the market presumption of reliance—the bedrock of class certification in securities class actions—and therefore subjects him to unique defenses.  *See Basic v. Levinson*, 485 U.S. 224, 242–48 (1988) (describing fraud on the market standard and adopting presumption of reliance in context of securities class actions); *see also, e.g.*, *Kelley v. Rambus, Inc.*, No. C 07-1238 JF(HRL), 2008 WL 5170598, at *15 (N.D. Cal. Dec. 9, 2008), *aff'd*, 384 F. App'x 570 (9th Cir. 2010) (day trading activity "cast[] serious doubt on [plaintiff's] purported reliance on the market price of that stock or the company's financial or proxy statements"); *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("Such a high-volume day trader might be subject to the unique defense that frantic trading belies any true reliance on company reports or even on the integrity of the stock price itself.").

Specifically, throughout the Class Period, Doherty transacted in 175 purchases and 218 sales of Pivotal stock, frequently engaging in purchases and sales on the same day.  For example, on June 11, 2018, Doherty made 10 purchases and 29 sales of Pivotal stock, and on February 20, 2019, he made 8 purchases and 15 sales of Pivotal stock.  *See* ECF 30-3; *see also Applestein v. Medivation Inc*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010)

---

[8] *See also, e.g.*, *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 CIV. 10020 RMB, 2015 WL 1345931, at *3 (S.D.N.Y. Mar. 19, 2015) (rejecting lead plaintiff movant for discrepancies in transactions reported on certification).

(movant disqualified where trading volume reached as much as "44 trades in a single day," and on nine different occasions movant purchased and sold on same day); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140 MHP, 2008 WL 3925289, at *10 (N.D. Cal. Aug. 22, 2008) (day trader movant disqualified where it engaged in an average of eight trades a day).  In addition, Doherty is also an in/out trader, having fully liquidated his position in Pivotal securities numerous times throughout the Class Period.  *See* Wagstaffe Decl. Ex. A.  Courts frequently disqualify investors who have engaged in excessive in/out trading similar to Doherty's from acting as a representative for their respective class.  *See, e.g.*, *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) (reversing class certification involving representatives who were "in-and-out" traders); *Marcus v. J.C. Penney Co.*, No. 6:13-CV-736, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (disqualifying movant where"[s]uch active trading practices relies more on speculation rather than investing").

Moreover, investment losses suffered on transactions prior to the corrective disclosure are not recoverable and cannot be utilized to determine financial interest at the lead plaintiff stage.  *See Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss."); *see also Eichenholtz*, 2008 WL 3925289, at *4 ("[T]he court finds no reason to include losses in its calculations that would later be considered uncompensable."); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases).[9]  When evaluating only the losses ***caused*** by Defendants' revelation to the market at the end of the Class Period on June 4, 2019, Doherty's financial interest is reduced by approximately ***$55,000 to $131,225***.  *See* Movant Loss Analysis, Wagstaffe Decl. Ex. B.  Counsel for the Pivotal Investor Group are well aware that courts only utilize compensable losses in analyzing financial interest, having previously ***objected*** to a magistrate judge's failure to do so.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *1 (E.D.N.Y. Mar. 2, 2007), *adhered to on reconsideration*, No. 06CV1825NGGRER, 2008 WL 820015 (E.D.N.Y.

---

[9] S*ee also, e.g.*, *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 499 (D. Conn. 2017) ("I align myself with the significant weight of authority in concluding that *Dura*'s loss calculation method must be undertaken when considering a lead plaintiff motion.").

Mar. 25, 2008).

In the event that this Court does not disqualify Doherty's motion outright, OCKERS and St. Louis respectfully submit that the Court only use his *recoverable* loss of approximately *$131,225* in determining financial interest.

**3.    Doherty Is Additionally Subject to Unique Defenses by Virtue of His Employment at EMC**

Doherty is also an atypical and inadequate class representative by virtue of his prior employment at Dell EMC.  Pivotal was formed in 2012 after spinning out of EMC Corporation and VMWare (which was majority-owned by EMC).  Dell then acquired EMC in 2015.  After the spinoff in which Dell EMC retained a controlling stake in Pivotal, Pivotal remained a strategic partner of Dell EMC, noting in its most recent 10-K that "[w]e jointly market and sell our products and services with Dell and VMware and enjoy significant and mutually beneficial commercial and go-to-market relationships." Indeed, Dell EMC related transactions accounted for 36 percent of Pivotal's total revenue in fiscal 2019.  Doherty served as a Technical Global Program Manager at EMC from May 2010 through November 2017, just six months prior to Pivotal's IPO.  In that capacity, according to Doherty's LinkedIn profile[10], he "oversaw Cloud Platform Solution Programs, inclusive of Dell EMC's core business units, software divisions *and third party partners* [and] [l]ead[] cross-functional priority setting relative to each program, project and initiative."

Doherty's employment by Dell/EMC and his oversight of "third party partners," which undoubtedly included Pivotal, and his contact with former colleagues raise the real prospect that Doherty was exposed to material non-public information concerning Pivotal.  Thus, Doherty's employment by Dell EMC and his work with Pivotal risk becoming the focus of the litigation subjecting Doherty to unique defenses that render him inadequate and atypical to represent the class.  *See In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 459 (N.D. Ala. 2003) ("Plaintiffs Orman and Smith . . . thus, have unique claims of reliance apart from the fraud-on-the-market

[10] *See* LinkedIn Profile of Steven J. Doherty (available at https://www.linkedin.com/in/steven-j-doherty-036337/).

theory and would be subject to unique defenses . . . ."); *Anderson v. Bank of The South, N.A.,* 118 F.R.D. 136, 148 (M.D. Fla. 1987).[11]

### D.      Tech Trader Is Individually Unfit for the Role of Lead Plaintiff

Tech Trader, by virtue of its opaque hedge fund structure and trading method, is atypical to the Class as a whole.  Specifically, Tech Trader, a self-described "Fully Autonomous Hedge Fund with No Human Intervention," is a closed-end, self-managed black box trading program that trades entirely on its own accord:

> Since its launch in Dec. 2012, Tech Trader has been trading live capital completely on its own with no human intervention.  It is fully automated trading in the truest sense with no human input, no tweaking, no updates. ***It is, for all intents and purposes, a fully autonomous hedge fund, one of the first of its kind to truly trade for years on end completely unsupervised***.[12]

In an interview with *MarketsMedia*, William Mok, the signatory on Tech Trader's certification, reiterated how Tech Trader enters into transactions completely under its own supervision, stating in pertinent part: "You can point at anything and say that it's not 100% machine," he said "Maybe it's 99% machine. ***But in practice now, we've been living it for a year and have not had to do anything to it that is related to trading***."[13]  Given this admission by Tech Trader's purported "Investment Manager," it is unclear what Mok's true role is based on Tech Trader's uniquely robotic approach to trading.  One this is clear, however: Mok "***has long moved on to other interests***."[14]  Therefore, it is unclear ***who***, or ***what***, is attempting to represent the Class, or even ***how*** Tech Trader plans to go about serving as Lead Plaintiff in the above-captioned actions.

Tech Trader's very transactions at issue in this litigation further underscore the opacity concerning its structure, investment style, and motivations in this litigation.  Tech Trader's ***only*** transaction during the Class Period occurred mere hours before the corrective disclosure on June

---

[11] *See also  In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 456, (S.D. Tex. 2002) (denying class certification where "relationship between [plaintiff's advisor] and Enron could make [plaintiff] subject to unique defenses"); *Endo v. Albertine*, 147 F.R.D. 164, 168 (N.D. Ill. 1993) (representative's access to information rendered him atypical).

[12]  *See Tech Trader*, *supra* note 4 (emphasis added).

[13]  Rob Daly, *AI Trader 'Sets and Forgets'*, MARKETSMEDIA (Jan. 24, 2017), https://www.marketsmedia.com/ai-trader-reaches-set-forget/.

[14]  *See Tech Trader*, *supra* note 4 (emphasis added).

4, 2019, thus giving it standing for approximately *0.25 percent* of the Class Period.  In addition, while Tech Trader claims that it made a single purchase of 51,114 shares at the price of $18.7946 on June 4, 2019, no single trade on that date exceeded 50,000 shares.  *See* Wagstaffe Decl. Ex. C.  Therefore, it would appear that Tech Trader has instead provided the court with the average purchase price of its total shares acquired on June 4, 2019 over the course of several transactions.  This discrepancy further underscores the fact that the Pivotal Investor Group has not been forthcoming in its PSLRA certifications.  *See infra*, Section I.C.1.

Tech Trader, as an experimental trading program, would be an experimental lead plaintiff.  If appointed, Tech Trader would undoubtedly saddle the Class with countless arguments by Defendants challenging its uniquely opaque structure and trading style.  Courts in the past, including this Court, have rejected similarly "unique" lead plaintiffs, finding that their trading strategies rendered them atypical.  *See, e.g.*, *Brocade Commc'ns Sys. Inc.*, 2006 WL 7348107, at *2.  In *Brocade*, this Court found that the hedge fund movant's complex structure, while possibly "common in the hedge fund industry, [was] certainly atypical of the class."  *Id.*  The Court also found the hedge fund additionally unfit to represent the class as "it was not clear from the pleadings that [the movant had] authorization from its limited partners to turn over documents that may become relevant and important in this litigation."[15]  *Id.*  Accordingly, Tech Trader is atypical to the Class and its motion should be denied.

### E.    Limited Discovery Is Warranted to Clarify the Issues Plaguing the Pivotal Investor Group

If this Court does not deny the Pivotal Investor Group's motion outright, OKCERS and St. Louis Police respectfully request the Court grant limited discovery to determine whether the

---

[15] *See also, e.g.*, *In re Microstrategy Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000) (refusing to appoint lead plaintiff that "engages in transactions far beyond the scope of what a typical investor contemplates"); *In re Conseco, Inc. Sec. Litig.*, 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) (declining to appoint movant where trading strategy rendered the fund inadequate); Lead Plaintiff Order at 2, *In re Intercloud Sys., Inc. Sec. Litig.*, No. 14-cv-01982 (D.N.J. Nov. 4, 2014), ECF No. 36 (denying lead plaintiff movant due to "unique trading strategy," which included "an algorithmic trading approach, complex mathematical formulae, and other mechanisms," thus rendering it atypical to the class as a whole and potentially subjecting the class to "unique defenses which may threaten to become the focus of the litigation") (attached hereto as Ex. D to the Wagstaffe Decl.).

Pivotal Investor Group is capable of adequately representing the Class.  When another plaintiff "demonstrates a reasonable basis for finding that the presumptively most adequate plaintiff is incapable of adequately representing the class," the PSLRA permits discovery relating to whether that party "is the most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iv).  As set forth herein, a reasonable basis exists to justify limited discovery of the Pivotal Investor Group given the myriad issues concerning its adequacy and typicality.  *See Applestein*, 2010 WL 3749406, at *5 ("the lack of transparency . . . makes it impossible for the parties or the court to determine whether or not [the fund] is a typical investor"); *Andrade v. Am. Apparel, Inc.*, No. CV 10-06352 MMM (RCx), 2011 WL 13131110, at *3 (C.D. Cal. Jan. 21, 2011) (collecting cases allowing limited discovery).[16]

OKCERS and St. Louis Police have therefore demonstrated a reasonable basis for discovery of Tech Trader and Doherty based on their numerous adequacy and typicality issues.

## II.   OKCERS and St. Louis Police Are the Presumptive Lead Plaintiff

OKCERS and St. Louis Police have the largest financial interest while also satisfying both the adequacy and typicality requirements of Rule 23.  Therefore, under the "sequential" lead plaintiff process adopted by this Circuit, they are the presumptive lead plaintiff and entitled to appointment.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest.").  OCKERS and St. Louis Police, whose Lead Plaintiff motion is currently unopposed outside of the Pivotal Investor Group, indisputably possess the largest financial interest as the only qualified lead plaintiff movant.

As illustrated in the attached loss analysis, Wagstaffe Dec. Ex. B, OKCERS and St. Louis Police are the ***only movant*** currently before this Court who satisfies Rule 23, with OKCERS possessing the largest qualified individual loss.[17]  In addition, both OCKERS and St. Louis

---

[16] *See also In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999);  *Prissert v. Emcore Corp.*, No. 08-1190 MV/RLP, 2009 WL 10668530, at *3–4 (D.N.M. Sept. 29, 2009) (allowing limited discovery into group of opaque hedge fund movants).

[17] To the extent opposing movants may point out that certain purchases by OKCERS were made outside the daily trading range on September 12, 2018 and December 12, 2018, Counsel informs the Court that those trades are accurately reported and were made either before market open or after market close.  *See* After Hours Trading Range, Wagstaffe Decl., Ex. E.

Police collectively have standing to pursue all claims asserted.  Finally, OCKERS and St. Louis Police, unlike the Pivotal Investor Group, are ***both*** institutional investors, the archetypal lead plaintiffs as envisioned by the PSLRA.  *See* H.R. Conf. Rep. No. 104-369, at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

Indeed, OKCERS and St. Louis Police are precisely the type of sophisticated institutional investors that Congress intended to lead securities class actions.  Both institutions fully understand their obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action.  Unlike the Pivotal Investor Group, **prior** to seeking a role as Lead Plaintiff, representatives of OKCERS and St. Louis Police held a joint conference call on August 19, 2019, to discuss the merits of the claims alleged, their standing to pursue those claims, the significant losses the funds incurred, and the funds' common goals in maximizing recovery for all Pivotal investors.  Courts in the Ninth Circuit routinely appoint cohesive groups of institutional investors like OKCERS and St. Louis Police that have "demonstrated they will vigorously prosecute the action on behalf of the class." *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012).

OKCERS and St. Louis Police have also demonstrated their adequacy through their selection and retention of Labaton Sucharow as proposed Lead Counsel on behalf of the Class.  Labaton Sucharow is a nationally recognized securities class action law firm with an established track record of achieving substantial recoveries for the benefit of injured investors and has the expertise and resources necessary to handle litigation of this complexity and scale.  Moreover, WVBR LLP, a San Francisco-based firm, also has a distinguished record representing plaintiffs in securities class actions such as the instant case.

Accordingly, as OCKERS and St. Louis Police are the movant with the largest financial interest who both satisfies the adequacy and typicality requirements of Rule 23, they are the presumptive Lead Plaintiff.  OCKERS and St. Louis Police respectfully request the Court ensure the Class receives experienced, institutional leadership willing to vigorously pursue recovery on its behalf by appointing them as Lead Plaintiff.

## <u>CONCLUSION</u>

OKCERS and St. Louis Police respectfully request that the Court consolidate the above-captioned related actions, appoint the OKCERS and St. Louis Police as Lead Plaintiff, approve their selection of Labaton Sucharow as Lead Counsel to the Class and WVBR LLP as Liaison Counsel for the Class, and deny all competing motions.  Alternatively, OCKERS and St. Louis Police respectfully request limited discovery into the Pivotal Investor Group, both collectively and individually, concerning their ability to fairly and adequately represent the Class.

DATED:  September 3, 2019                        Respectfully submitted,

*/s/ James M. Wagstaffe*

James M. Wagstaffe (#95535)
Frank Busch (#258288)
**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff Oklahoma City Employee Retirement System and Police Retirement System of St. Louis and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 3, 2019, I was authorized to electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *James M. Wagstaffe*
James M. Wagstaffe