JORDAN ETH (CA SBN 121617)
JEth@mofo.com
MARK R.S. FOSTER (CA SBN 223682)
MFoster@mofo.com
ROBERT L. CORTEZ WEBB (CA SBN 274742)
RWebb@mofo.com
KAREN LEUNG (CA SBN 323029)
KLeung@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendants Pivotal Software, Inc.,
Cynthia Gaylor, Egon Durban, Khozema Z. Shipchandler,
Marcy S. Klevorn, Michael Dell, Paul Maritz, Robert Mee, and
William D. Green

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE PIVOTAL SECURITIES LITIGATION | Master File No. 3:19-cv-03589-CRB<br><br>PIVOTAL DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT<br><br><br>Date:      July 17, 2020<br>Time:      10:00 a.m.<br>Judge:     Hon. Charles R. Breyer<br>Courtroom: 6—17th Floor |

# TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ............................................................................................................ v

I.    PLAINTIFFS MUST MEET HEIGHTENED PLEADING STANDARDS. ..................... 1

II.   PLAINTIFFS FAIL TO PLEAD A MATERIALLY MISLEADING STATEMENT. ........................................................................................................... 1

    A.   Plaintiffs Fail to Show Any Challenged Statement Was False When Made. ......... 2

        1.   Plaintiffs' allegations about "sales cycles" fail to show falsity. ................ 2

        2.   Plaintiffs' allegations about Pivotal's competitiveness fail. ...................... 3

        3.   Plaintiffs fail to show the falsity of the opinion statements. ...................... 5

        4.   Plaintiffs' fallback argument about alleged "omissions" fails. .................. 6

    B.   Many Challenged Statements Are Not Actionable for Additional Reasons. .......... 7

        1.   General expressions of optimism are not actionable. ................................. 8

        2.   The forward-looking statements are not actionable. .................................. 8

    C.   Regulation S-K Does Not Save Plaintiffs' Unsupported § 11 Claim. .................. 10

III.  PLAINTIFFS FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER. ............. 11

    A.   The CW Allegations Do Not Support Any Inference of Scienter. ........................ 12

    B.   The Core Operations Theory Does Not Apply. .................................................... 13

    C.   Plaintiffs Do Not Offer a Cogent and Compelling Theory of Fraud. ................... 13

IV.   PLAINTIFFS' SECTION 12(A)(2) CLAIM FAILS FOR ANOTHER REASON. ......... 14

V.    PLAINTIFFS' CONTROL-PERSON CLAIMS FAIL. ............................................... 15

VI.   CONCLUSION ....................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atossa Genetics Inc. Sec. Litig.,*
868 F.3d 784 (9th Cir. 2017)...................................................................................... 9

*Berson v. Applied Signal Tech., Inc.,*
527 F.3d 982 (9th Cir. 2008)................................................................................ 7, 13

*Brody v. Transitional Hosps. Corp.,*
280 F.3d 997 (9th Cir. 2002)...................................................................................... 6

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.,*
856 F.3d 605 (9th Cir. 2017)................................................................................ 6, 12

*In re Cutera Sec. Litig.,*
610 F.3d 1103 (9th Cir. 2010).................................................................................... 9

*In re Daou Sys. Inc.,*
411 F.3d 1006 (9th Cir. 2005).................................................................................. 10

*Greenberg v. Sunrun,*
233 F. Supp. 3d 764 (N.D. Cal. 2017) ....................................................................... 8

*Hertzberg v. Dignity Partners, Inc.,*
191 F.3d 1076 (9th Cir. 1999).............................................................................. 14, 15

*Khoja v. Orexigen Therapeutics, Inc.*
899 F.3d 988 (9th Cir. 2018)................................................................................... 3, 6

*In re Lexar Media Sec. Litig.,*
2005 WL 1566534 (N.D. Cal. July 5, 2005).............................................................. 14

*In re McKesson HBOC Secs. Litig.,*
126 F. Supp. 2d 1248 (N.D. Cal. 2000) ................................................................... 15

*Metzler Inv. GmbH v. Corinthian Colls., Inc.,*
540 F.3d 1049 (9th Cir. 2008).................................................................................. 3, 6

*Mingbo Cai v. Switch, Inc.,*
2019 WL 3065591 (D. Nev. July 12, 2019)................................................................ 11

*Mulligan v. Impax Labs, Inc.,*
36 F. Supp. 3d 942 (N.D. Cal. 2014) ........................................................................ 13

*Nguyen v. Endologix, Inc.,*
---F.3d----, 2020 WL 3069776 (9th Cir. June 10, 2020)..................................... 4, 12, 13, 14

*Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*,
    2016 WL 7475555 (N.D. Cal. Dec. 29, 2016) ............................................................ 14

*In re NVIDIA Corp. Sec. Litig.*,
    768 F.3d 1046 (9th Cir. 2014) .................................................................... 1, 3, 10

*Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015) ............................................................................................ 5, 6

*Or. Pub. Emps. Ret. Fund v. Apollo Grp.*,
    774 F.3d 598 (9th Cir. 2014) ................................................................................. 12

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ........................................................................... 8, 12

*In re Quality Systems, Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) ............................................................................... 13

*In re Restoration Robotics, Inc. Sec. Litig.*,
    417 F. Supp. 3d 1242 (N.D. Cal. 2019) ................................................................. 10

*Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v.
    Hewlett-Packard Co.*,
    845 F.3d 1268 (9th Cir. 2017) ................................................................................. 7

*In re Rigel Pharm. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) .................................................................... 1, 14, 15

*Rubke v. Capitol Bancorp Ltd.*,
    551 F.3d 1156 (9th Cir. 2009) ................................................................................. 1

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) .................................................................................. 7

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017) .................................................................. 8

*Steckman v. Hart Brewing, Inc.*,
    143 F.3d 1293 (9th Cir. 1998) ............................................................................... 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................................................. 11

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ................................................................ v, 2, 3, 4, 5, 12

*In re Violin Memory Sec. Litig.*,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ........................................................ 11

*Webb v. Solarcity Corp.*,
884 F.3d 844 (9th Cir. 2018).................................................................................... 14

*Zaghian v. Farrell*,
675 Fed. Appx. 718 (9th Cir. 2017) ........................................................................... 9

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)..................................................................................... 12

**Statutes**

15 U.S.C. § 78u-5(c)(1)(A)(i) .................................................................................................. 9

**Other Authorities**

17 C.F.R. § 229.105 ................................................................................................................. 11

17 C.F.R. § 229.303 ................................................................................................................. 10

## SUMMARY OF ARGUMENT

The Opposition claims to present a "straightforward narrative of Defendants' fraudulent conduct." That narrative does not challenge Pivotal's success during the Class Period—achieving or beating its guidance every quarter, increasing the number of its customers, and recording higher revenues year-over-year. Nor do Plaintiffs contest the accuracy of these results.

Instead, the theme of Plaintiffs' narrative is that things could have been even better had Pivotal not had long sales cycles (as disclosed) or challenges competing (as disclosed, and as all companies do). Plaintiffs' narrative does not rely on well-pled facts. Rather, it relies on conclusory rhetoric, labelling Pivotal's products as "outdated" and "monolithic" as compared to "more attractive, innovative, and cheaper alternatives." This rhetoric does not plead fraud.

As Defendants' motion explained, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1085-89 (9th Cir. 2002), rejected similarly vague falsity allegations. The Opposition responds to *Vantive* once, in a footnote—but ignores its holding that vague statements, absent corroborating *facts*, are insufficient to state a federal securities claim. That is the precise problem here.

Plaintiffs' scienter arguments are no better. The Opposition relies on allegations from CWs who say that Defendants attended meetings and received reports, as do all executives. Completely missing are details about those meetings and reports, let alone facts contradicting Defendants' public statements. The absence of specifics makes this case like *Intuitive, Apollo, Vantive*, and other Ninth Circuit decisions rejecting similarly vague allegations.

The absence of a coherent theory or any alleged personal benefit (e.g., stock sales) highlights the weakness of Plaintiffs' scienter arguments. The Opposition says these parts of a fraud claim are not necessary, while ignoring multiple Ninth Circuit decisions that affirmed dismissal when these telltale signs of fraud were missing.

In the end, Plaintiffs tell a narrative of fraud by hindsight. In June 2019, more than 14 months after the IPO, Pivotal lowered its going-forward revenue guidance for its *2020 fiscal year*. The market was disappointed with Pivotal's future prospects. The stock dropped. Nothing about the June 2019 disclosure demonstrates that any statement in the preceding 15 months was a lie. End of story. This Court should dismiss the Complaint.

## I.    PLAINTIFFS MUST MEET HEIGHTENED PLEADING STANDARDS.

Plaintiffs agree that heightened pleading standards apply to their '34 Act claims.[1] They argue, however, that Rule 9(b) does not apply to their '33 Act claims.  The Opposition states that Plaintiffs' allegations relating to Pivotal's IPO Registration Statement do not "sound in fraud." (Opp. 6.)  Plaintiffs expressly undermine that assertion in the very first sentence of their Opposition, stating that the Complaint is predicated on "a straightforward narrative of Defendants' *fraudulent* conduct . . . [*b*]*eginning before*" the IPO.  (Opp. v (emphasis added).) The Court should take Plaintiffs at their word.  Plaintiffs' assertion that they do not allege "'a unified course of fraudulent conduct'" is meritless.  (Opp. 6 (quoting cases).)

Indeed, the '33 Act and '34 Act allegations are nearly identical, almost word-for-word, a point the Opposition ignores.  (*Compare* ¶¶ 9-11, 166 *with* ¶¶ 17, 238; MTD 6-7.)  And they depend on "common" factual allegations.  (¶¶ 25-147.)  Where the "same factual allegations" are used, the court "can assume that [the '33 Act claim] sounds in fraud," as held in *Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009), which the Opposition ignores.  (MTD 4-5.) That Plaintiffs put their nearly verbatim allegations under different headers makes no difference: "nominal efforts to disclaim allegations of fraud" are routinely rejected.  *In re Rigel Pharm. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012); (MTD 4).

In any case, the Complaint's vague allegations about the Registration Statement do not pass muster under Rule 8's requirement that '33 Act allegations be more than "conclusory" or speculative.  (MTD 4 (quoting *Omnicare Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).)  The Opposition points to no non-conclusory allegations that are contemporaneous with the Registration Statement, let alone any that show falsity.

## II.    PLAINTIFFS FAIL TO PLEAD A MATERIALLY MISLEADING STATEMENT.

Plaintiffs fail to plead any facts, much less contemporaneous facts, showing that any statement was false when made.  (Part A.)  Instead, the Opposition's pattern is to recite the legal

---

[1] Plaintiffs argue that the Court "must accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." (Opp. 5.)  This holds only for well-pleaded factual allegations, as courts do not "accept as true allegations that are conclusory." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014).

test and declare it satisfied without analysis or reference to any facts.  This is reason enough to dismiss the Complaint.  Beyond that failure, many of the challenged statements are not actionable for one or more additional reasons—either because they are general expressions of optimism (Part B.1) or because they are protected by the Reform Act's Safe Harbor (Part B.2).

> **A.      Plaintiffs Fail to Show Any Challenged Statement Was False When Made.**

> **1.      Plaintiffs' allegations about "sales cycles" fail to show falsity.**

Plaintiffs claim Defendants misled them about Pivotal's sales cycles.  The Opposition does not dispute that Defendants repeatedly disclosed that Pivotal's "sales cycles can be long, unpredictable and vary seasonally." (MTD 6; Opp. 3.)  Instead, Plaintiffs contend that Pivotal's statements misled because sales cycles were, they say, "elongating" and "lengthening" before Pivotal's IPO and throughout the Class Period. (Opp. 2:15, 2:25, 4:25, 7:8, 10:24.)

"Lengthening" from what to what, and when?  The Opposition, like the Complaint, has no answers. (MTD 6:13.)  Plaintiffs' allegations are, therefore, even more defective than those allegations rejected by *In re Vantive Corp. Sec. Litig.*, 283 F.3d at 1086.  There, the Ninth Circuit affirmed dismissal of vague assertions regarding the alleged falsity of statements about sales cycles.  Similarly, here Plaintiffs nowhere allege "what the actual length of the cycle" was at any time. *Id.*  As a result, Plaintiffs fail to show that "sales cycles" were any different than disclosed by Defendants at any point, including on September 12, 2018 (in the middle of the Class Period, five months after the IPO), when Defendant Gaylor reported that sales cycles were not lengthening. (Opp. 3:15.)

The Opposition tries to distinguish *Vantive* in a footnote, stating that Plaintiffs' allegations are corroborated by "several witness accounts." (Opp. 10 n.11.)  That is not true.  Only CW6 allegedly says anything about "sales cycles"—claiming that deals with "larger companies took more time to pursue and complete and led to an elongated sales cycle at Pivotal." (¶ 110.)  It is on this one line—repeated over 12 times in the Complaint and over 8 times in the Opposition— that Plaintiffs hinge their claim for the 14-month class period.[2]  Repetition of a vague and

---

[2] (¶¶ 9(a), 14, 16, 17, 166(a), 166(e), 167(a), 238(a), 238(h), 249, 313(a), 315; Opp. 2:15, 2:25-26, 6:2, 7:8, 9:9, 10:24, 12:19, 15:3.)

conclusory allegation is not corroboration—particularly where the CW making the allegation left Pivotal just two months after the IPO (June 2018) and had limited responsibility for just four (of the many) states into which Pivotal sold its products.  (¶ 103.)

Furthermore, nothing about Pivotal having "elongated" (past tense) sales cycles is "necessarily inconsistent" (*Vantive*, 283 F.3d at 1087 n.7) with any challenged disclosures at any time relating to Pivotal's "long sales cycles" or any other subject.  If sales cycles had already "elongated" before the IPO, as CW6 vaguely hints (¶ 110), the Registration Statement accurately described the cycles as "long."  The same holds true for the Class Period's duration.

Finally, the Opposition asserts that "growth in RPO and deferred revenue was decreasing substantially" as Pivotal experienced lengthening sales cycles.  (Opp. 10:22-23.)  The Opposition does not cite anything in the Complaint for that assertion.  For good reason:  the only relevant paragraph in the Complaint is entirely conclusory, citing no CW or any facts.  (¶ 14.)  In any case, that assertion is belied by the year-over-year RPO growth that Pivotal reported in the quarterly reports that the Complaint incorporates by reference.  (MTD 2:27-3:2 & n.2.) [3]

### 2. Plaintiffs' allegations about Pivotal's competitiveness fail.

The Opposition argues that Pivotal misled investors about its products, alleging principally that Pivotal's PAS product was "outdated" (Opp. v:8), "monolithic" (Opp. 2:27), and "inferior relative to the competition" (Opp. 9:7); and that Pivotal was "challenged" (Opp. 9:16) and suffering from "problems with sales execution and increased competition" because

---

[3] The Court can consider Pivotal's reported RPO, revenues, and Net Expansion Rates, which are incorporated by reference in the Complaint and subject to judicial notice, as Defendants' request for judicial notice ("RJN") demonstrated. (ECF No. 83.)  Plaintiffs do not oppose the RJN, but note that the Court's consideration of documents is limited to "their existence." (Opp. 5 n.8, 1 n.5.)  Information incorporated into the Complaint by reference (including Exhibits 1, 2, 5, 12, and 15-21) may be considered by the Court for all purposes: "Once a document is deemed incorporated by reference, the entire document is assumed to be true for purposes of a motion to dismiss, and both parties—and the Court—are free to refer to any of its contents." *NVIDIA*, 768 F.3d at 1058 n.10.  This "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom— their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  Further, the contents of SEC filings (including Exs. 3, 4, and 6-14) may be considered by the Court. *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 n.1, 1064 n.7 (9th Cir. 2008).

"competitors were offering more attractive, innovative, and cheaper alternatives." (Opp. v:11.)

Similar allegations were rejected as insufficiently vague by *Vantive*, 283 F.3d 1088 (MTD 7). There, the complaint alleged that competitors' products had "superior functionality," resulting in "slow sales of [Vantive's] products." *Id.* The Ninth Circuit held that the "vagueness of these allegations needs no elaboration; there are no facts alleged to show how the imprecise deficiencies asserted to hamper the product affected Vantive's competitive position," or objective facts showing that Vantive was "non-competitive in fact." *Id.* The same holds true here.

In response to *Vantive*, the Opposition states in the same footnote referenced above that the Complaint has "corroborating details." (Opp. 10 n.11.) Plaintiffs do not specify those "details" and instead direct the Court to over 40 paragraphs in the Complaint, essentially saying "go find them." (*Id.* (citing ¶¶ 97-129, 215-225).) But those details are not there. Plaintiffs' string of adjectives cannot substitute for the facts that are required. *See Nguyen v. Endologix, Inc.*, ---F.3d----, 2020 WL 3069776, at *9 (9th Cir. June 10, 2020) (affirming dismissal where CW allegations were "high on alarming adjectives—'serious and unsolvable,' 'dangerous,' 'urgent,' and so on. But they are short on the facts").

The Opposition argues that Pivotal misled the market by stating that Pivotal Cloud Foundry ("PCF") was "integrated with open-source projects such as Kubernetes." (Opp. 3:6-7.) According to Plaintiffs, this was false because *one component* of PCF—PAS—did not incorporate Kubernetes. (*Id.*) A review of the challenged statement in context shows the conspicuous flaw in Plaintiffs' argument. PCF contained several components, of which PAS was only one. The Registration Statement identified a different PCF component, PKS—not PAS—as Pivotal's Kubernetes-based PCF component. (Ex. 1 at 100 (distinguishing PAS, "our flagship cloud-native application platform," from PKS, which "allows enterprises to deploy and operate Kubernetes").) Whether or not PAS incorporated Kubernetes at the time of the IPO is irrelevant, as the Registration Statement neither said nor suggested that it did.

Finally, Plaintiffs' competition claim takes a stab at Pivotal's reported revenue. For example, the Opposition points out CW6's opinion that his four-state region (¶ 103) had a "big drop in revenue . . . due to competition." (Opp. 2:24, 9:21.) What does that mean? *Vantive*

rejected a similar claim about "slow sales" allegedly caused by increased competition because the vagueness of the assertion failed to show that the company was "non-competitive in fact." 283 F.3d at 1088. The same is true here. Furthermore, Plaintiffs do not challenge a single statement about Pivotal's reported revenues—which were growing in June 2018, when CW6 left the Company—let alone revenues in CW6's four-state region. (MTD 2, Fig. 2.) And Plaintiffs do not and cannot dispute that Pivotal reported revenues that grew throughout the Class Period according to the quarterly reports that are subject to judicial notice. (*See id.*)

### 3. Plaintiffs fail to show the falsity of the opinion statements.

Plaintiffs have failed to show the falsity of the 42 challenged opinion statements. (MTD 9-10.) Plaintiffs argue that 7 of these are not opinions.[4] (Opp. 11 & n.13.) As to the remaining 35 (a "small number," per the Opposition), Plaintiffs offer only a short, conclusory assertion that they meet the stringent *Omnicare* test for showing the falsity of opinions. (Opp. 11-12.) Plaintiffs, however, fail to point to a single fact, let alone a "particular (and material) fact," regarding any Defendant's state of mind, the basis for their opinions, their inquiry into the facts, or the knowledge the Defendants did or did not have. *See Omnicare*, 575 U.S. at 190, 194, 196. This is "no small task for an investor." *Id.* at 194. Plaintiffs do not even try to do this.

As for the 7 statements that Plaintiffs argue are not opinions (none in the Registration Statement),[5] the Opposition relies on removing statements from their context. Plaintiffs have excised from their argument portions of the challenged statements that are opinions:

| St.#/ ¶ | Opposition Excerpt | Opinion Portion Omitted by Opposition |
|---|---|---|
| #33 / ¶ 245 | "[w]e're starting to see a lot of customers coming in, wanting to buy PKS, wanting an enterprise Kubernetes solution" | "So I think in terms of new logos, we're going to see continued improvement." |
| #20 / ¶ 229 | "landing and expanding is working" | "We think we're at the leading edge of really the technology to expand with customers." |
| #27 / ¶ 241 | "market getting bigger for us" | "It's definitely a multi-year thing and I think that's good for us." |
| # 33 / ¶ 245 | "a lot of uptake in our pipeline for PKS and a lot of our existing | "So I think in terms of new logos, we're going to see continued improvement." |

---

[4] Plaintiffs argue that two other statements (Statements 21 (¶ 230) and 36 (¶ 247) in Appendix A) are not opinions. (Opp. 11, n.13.) Defendants did not argue otherwise. (MTD 9 n.6.)
[5] Plaintiffs do not contest that the challenged risk-factor statements should be evaluated as opinions and ignore the cases holding that risk factors are not actionable. (MTD 10:13-19 & n.7.)

| St.#/ ¶ | Opposition Excerpt | Opinion Portion Omitted by Opposition |
|---|---|---|
| | customers jumping onto PKS quite quickly"; "pretty fast uptake" | |
| #45 / ¶ 265 | "we're seeing a lot of traction with existing customers" | "we're encouraged by the early signs that we're seeing" |
| # 53 / ¶ 274 Ex. 19 | "still in the early stages of this high-growth market" | "we're pleased with the early traction . . . "; "we're enthusiastic about the market opportunity . . . " (Ex. 19 at 6.) |
| # 58 / ¶ 277 | "we're really encouraged by what we're seeing with PKS and the traction we're seeing with customers, both new and existing" | "We are encouraged by the pipeline that we're seeing." |

(*Compare* Opp. 11 & n.13 *with* MTD App'x A, ## 20, 27, 33, 34, 45, 53, 58.) Plaintiffs cannot survive dismissal by asking the Court to ignore the words that, when reviewed in context, show the challenged statements were grounded in subjective beliefs. *See Omnicare*, 575 U.S. at 190, 194, 196; *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616-18 (9th Cir. 2017). Plaintiffs' failure to meet *Omnicare* is fatal, providing yet another ground for dismissal of the opinion statements.

### 4. Plaintiffs' fallback argument about alleged "omissions" fails.

Rather than plead facts showing that any of the 62 challenged statements was false when made, the Opposition falls back on a claim that all of Pivotal's statements omitted material information. (Opp. 10.) Plaintiffs acknowledge that liability for alleged omissions only arises when statements "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." (MTD 8; Opp. 10:6-7.) That test is hard to meet, as illustrated by the cases cited by Defendants and ignored in the Opposition.

In *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002), the non-disclosure of a merger did not render statements about a stock repurchase misleading, because the company "neither stated nor implied anything regarding a merger." In *Metzler*, 540 F.3d at 1071, the non-disclosure of a federal investigation was not misleading, because the defendant did not make an "affirmative statement" that "suggested it was *not* under any regulatory scrutiny."

Plaintiffs' cited cases underscore what is lacking here. In *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), clinical trials were reported as ongoing and

positive, when specific factual allegations showed that the trials had been stopped and unsuccessful. In *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705-06 (9th Cir. 2016), defendants stated that "all" animal studies supported the safety of a new drug, when a rat study showed that the drug was potentially carcinogenic. In *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008), order backlog was touted without disclosing that the backlog stemmed from a stop-work order that turned a factory into a "ghost town."

What affirmative misimpression did Defendants create, and what statements created that affirmative misimpression? Plaintiffs fail to say. Instead, Plaintiffs assert that Pivotal did not disclose that it "struggled to attract new customers" and "retain existing customers."[6] (Opp. 10:21-22 (citing ¶¶ 105-119).) This is just a repackaging of Plaintiffs' defective misrepresentation claims, which fail for all the reasons discussed above.

Finally, Plaintiffs argue that materiality is shown by the stock market's reaction when Pivotal lowered its going-forward guidance at the end of the Class Period. (Opp. 11.) The argument puts the cart before the horse. Plaintiffs have not shown a "statement during the Class Period that was capable of being objectively false," so the Court need not (and Defendants are not asking the Court to) reach materiality. *Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017) (affirming dismissal). In any case, the "contention that a slump in [] stock [price] indicates materiality is not well-taken." *Id.* The Ninth Circuit's holding in *HP* applies with even more force here because the market was reacting to the lowering of going-forward guidance, not to any doubt cast on the truthfulness of *earlier* challenged statements.

**B.    Many Challenged Statements Are Not Actionable for Additional Reasons.**

Beyond Plaintiffs' failure to plead falsity, the claims should be dismissed for the separate and independent reason that most of the challenged statements are not actionable. (MTD 12.)

---

[6] Plaintiffs do not reconcile this claim with the Registration Statement's disclosure that "Of the 73% increase in subscription revenue from fiscal 2017 to fiscal 2018, more than 85% of the increase was attributable to existing customers." (Ex. 1 at 72.) And a key element of Pivotal's "Growth Strategy" was to "Expand adoption within existing customers." (*Id.* at 98.) Throughout the Class Period, Pivotal repeatedly disclosed its "land-and-expand" strategy—to expand relationships with existing customers and obtain new ones. (*E.g.*, Exs. 15 at 9, 18 at 6.)

### 1.     General expressions of optimism are not actionable.

Defendants identified 18 statements that are non-actionable statements of optimism. (MTD 11; App'x A, Statements 1, 2, 3, 4, 24, 25, 26, 28, 29, 30, 33, 35, 39, 44, 46, 55, 57, and 62.)  These include characterizations of products or market position as "cutting-edge," "leading," "viral adoption," and "unmatched."  As this Court has held, "the securities laws do not exist to combat sales puffery of this sort."  *Greenberg v. Sunrun*, 233 F. Supp. 3d 764, 775 (N.D. Cal. 2017).  Plaintiffs fail to address any of these challenged statements on these grounds.  (Opp. 13.) Instead, Plaintiffs argue that statements must be read in context, but fail to show how any of the expressions of optimism are "objectively verifiable."  *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) (MTD 11:1).

As a fallback, Plaintiffs argue that this issue should not be determined on a motion to dismiss, ignoring multiple decisions by the Ninth Circuit and this Court that have routinely done so.  *E.g.*, *Intuitive*, 759 F.3d at 1060; *Greenberg*, 233 F. Supp. 3d at 775.[7]

### 2.     The forward-looking statements are not actionable.

Thirty-four statements are non-actionable under the PSLRA's Safe Harbor and the bespeaks-caution doctrine.  (MTD 11-12; App'x A.)  Of those 34, Plaintiffs argue two are not forward-looking.  (Opp. 12; ¶¶ 265, 266.)  Plaintiffs' argument on those two statements ignores the context in which they were made.  As to the first (paragraph 265), read as a whole, Defendant Gaylor was speaking to whether "early signs [Pivotal] was seeing around PKS, in particular," were likely to translate to *future* growth—which Defendant Gaylor answered in the affirmative, stating "we're looking for that momentum *to continue to build and translate to top line growth*." (¶ 265.)  This statement is a forward-looking opinion about *future* growth.  *Intuitive*, 759 F.3d at 1059 (holding that statements of present fact are protected under Safe Harbor when, "examined as a whole, the challenged statements related to future expectations and performance").

Paragraph 266 is similar.  The Opposition excises most of Defendant Gaylor's statement,

---

[7] Plaintiffs cite *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115, 1141 (N.D. Cal. 2017), which ruled that a statement that "sales were 'unchanged, or even growing, compared to previous quarters'" is not puffery.  But none of the 18 statements come close to promising steady or growing sales, and Plaintiffs do not explain how *Shenwick* is relevant here.

which is a response to being asked "do you expect . . . improvement in productivity?"  In response, she cautioned that analysts should *not* expect the sales cycle to shorten, but that "over time, as PKS becomes bigger and more important, as a part of—as a percentage of revenue, if you will, you may see that effect.  But I would see that kind of much further off to the future [than] anything in the next 12 months." (¶ 266.)  Again, the context of the statement makes clear that she was addressing a question about *potential*, *future* impacts of large customer sales.[8]

Plaintiffs also argue that all of the forward-looking statements are not protected by the Safe Harbor because they "omitted present and historical facts." (Opp. 12:21.)  Plaintiffs cite no authority for this argument.  The Safe Harbor absolutely protects forward-looking statements accompanied by meaningful cautionary language.  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010); 15 U.S.C. § 78u-5(c)(1)(A)(i).  And in all events, there was no "omission," for all the reasons discussed above.

Plaintiffs' final argument—that the cautionary language is "vague" and "boilerplate"—ignores that Pivotal, both in the IPO Registration Statement and throughout the Class Period, repeatedly and specifically warned investors about the very topics alleged in the Complaint. (*Compare* Opp. 12:23 *with* MTD 12:10-17.)  Plaintiffs' authorities are inapposite.  *In re Atossa Genetics Inc. Sec. Litig.*, 868 F.3d 784, 798 (9th Cir. 2017), rejected the application of the Safe Harbor to a challenged statement that "concerned only past facts, not statements about the future."  *Zaghian v. Farrell*, 675 Fed. Appx. 718, 720 (9th Cir. 2017), found that warnings of slow sales because of product defects and supply chain disruptions did not adequately warn of slow sales from a lack of customer interest.  Here, Pivotal's cautions were neither "vague" nor "boilerplate," and targeted the subjects at issue in this case:

- "Our sales cycles can be long, unpredictable and vary seasonally, which can cause significant variation in the number and size of transactions that close in a particular quarter." (App'x B at 1.)

- "We operate in a highly competitive environment" (and further explaining the risks from large-scale competitors and open-source projects, competition with strategic partners, and the potential for competitors to offer superior products at lower costs).

---

[8] Nowhere do Plaintiffs explain how Defendant Gaylor's caution to *not* expect acceleration of sales fits their theme that Pivotal was allegedly hiding a slowdown in sales.

(App'x B at 2.)

Plaintiffs do not attempt to explain how these cautions—or the additional 10 pages of cautionary language collected in Defendants' MTD Appendix B—are not "meaningful." The forward-looking statements should be dismissed with prejudice as a result.

### C.    Regulation S-K Does Not Save Plaintiffs' Unsupported § 11 Claim.

Plaintiffs' invocation of Regulation S-K does not save their § 11 claim. (MTD 8-9.)[9] As Defendants explained, for Item 303 of Regulation S-K to trigger § 11 liability, Plaintiffs must plead that a trend or uncertainty was both (1) "presently known to management" at the time of the IPO and (2) "reasonably likely to have material effects on the registrant's financial condition or results of operations." (MTD 8-9 (quoting *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998)).) Plaintiffs fail to make either showing. (*Id.*)

As to the first prong, Plaintiffs argue that there is no knowledge requirement in connection with Item 303, but rather, a showing of negligence is sufficient. (Opp. 7.) For support, Plaintiffs cite *In re Daou Sys. Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005), which does not mention Item 303, let alone address this issue. Moreover, *Steckman*, 143 F.3d at 1296, affirmed dismissal where a complaint failed to show defendants' knowledge of an alleged known trend. This knowledge requirement arises from Item 303's "known trend" language. *See id.*; 17 C.F.R. § 229.303. The Opposition ignores this controlling decision.

Plaintiffs erroneously suggest that *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263 (N.D. Cal. 2019), holds to the contrary. There, the court dismissed the Item 303 claim on the ground that the plaintiff did not "allege sufficient facts to show, at the time the Prospectus was published, physicians were stalling purchase *or* that Defendants knew of this trend." *Id.* at 1265 (emphasis in original).

As to the second prong of Item 303, Plaintiffs have failed to show the existence of any trend or condition that was reasonably likely to have a material effect on Pivotal's financial condition or results of operations at the time of the IPO. Plaintiffs' conclusory allegation that

---

[9] Regulation S-K does not serve as a liability hook for '34 Act claims. *NVIDIA*, 768 F.3d at 1056.

"sales cycles were elongating well before the IPO, beginning as early as March 2017" (Opp. 7), fails for all the reasons discussed above.

Plaintiffs' authority illustrates what is missing here. (Opp. 7.) In *In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *15 (N.D. Cal. Oct. 31, 2014), the court found that the plaintiffs had properly alleged an Item 303 violation based on undisclosed negative trends in government purchasing. That conclusion rested on specific factual allegations regarding precise dollar figures and detailing what was happening with government purchasing of the company's products during the relevant time. *Id.* (citing Am. Compl., ECF No. 58, filed Mar. 28, 2014, ¶¶ 57-64).

As to Item 105 (which Plaintiffs still refer to as Item 503), Plaintiffs do not cite any controlling Ninth Circuit law endorsing Item 105 as a § 11 liability hook. In any case, Plaintiffs do not dispute that an Item 105-predicated claim must meet, at a minimum, the standards under Item 303. (MTD 9 (citing authority).) The Item 105 claim thus falls with the Item 303 claim.

All Item 105 requires is a "discussion of the most significant factors that make an investment in the registrant or offering speculative or risky." 17 C.F.R. § 229.105. Pivotal's Registration Statement had 35 pages of Risk Factor disclosures (Ex. 1 at 16-50), including discussion of Pivotal's "long, unpredictable" sales cycles (*id.* at 20), which the Opposition complains about. (Opp. 7:8.) This was not just a theoretical risk. Pivotal disclosed: "Large individual sales have, in some cases, occurred in quarters subsequent to those we anticipated, or have not occurred at all." (Ex. 1 at 20.) These specific and on-point disclosures contrast with those in Plaintiffs' lone case, *Mingbo Cai v. Switch, Inc.*, 2019 WL 3065591, at *1 (D. Nev. July 12, 2019) (Opp. 7). There, Switch's registration statement contained numerous risk disclosures, but none indicated "the specific risks arising from Switch's new sales strategy." *Id.* at *6. Pivotal's on-point and specific risk disclosures more than satisfied Regulation S-K, Item 105.

## III.    PLAINTIFFS FAIL TO PLEAD A "STRONG INFERENCE" OF SCIENTER.

Plaintiffs' § 10(b) claim fails for the additional, independent reason that Plaintiffs fail to plead facts giving rise to a "strong inference" that Defendants made their statements with an "intent to deceive, manipulate, or defraud." (MTD 12-15; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007).) As the Ninth Circuit recently reiterated, the "'strong inference'

requirement has teeth" and is intended "to halt early on securities litigation that lacks merit or is even abusive." *Endologix*, 2020 WL 3069776, at *8. The Opposition's arguments confirm that the Complaint fails to meet this "'exacting pleading obligation.'" *Id.*

### A. The CW Allegations Do Not Support Any Inference of Scienter.

Plaintiffs fail to overcome Defendants' showing that Plaintiffs' CW allegations are neither reliable (that is, based on the CW's personal knowledge) nor indicative of scienter, as required by *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). (MTD 12-13.)

The Opposition does not dispute that the CWs are many reporting levels removed from the Executive Defendants and thereby lack "'first-hand knowledge regarding what the individual defendants knew or did not know.'" (MTD 13:10-11 (quoting *Intuitive*, 759 F.3d at 1063).) Nor do Plaintiffs dispute that the CWs only provide "snippets" of vague information, rather than a "view of the company's overall health," as required by *Intuitive*. (MTD 13:9.) This is fatal. (*Id.*)

Plaintiffs' scienter arguments rest on vague allegations about Defendants Mee and Gaylor "occasionally" (Opp. 14:14), or "possibly" (¶ 222), attending meetings on unspecified dates where unspecified business was discussed (Opp. 4, 14); that Defendant Gaylor was "apprised of issues related to sales and revenue" (as one might expect for a CFO) (Opp. 14:12); that information was "tracked;" and that reports were prepared and internally distributed. (Opp. 14.) The CW allegations simply relay how companies function and what executives do—no more— and certainly nothing fraudulent.

The CWs fail to provide any details about what was discussed in the meetings or reports, let alone "allegations linking specific reports and their contents to the executives" and their knowledge of some fraud. *Intuitive*, 759 F.3d at 1063. The CW allegations offer no factual information about the Executive Defendants' mental state whatsoever, let alone one showing scienter. Plaintiffs ignore *Intuitive*; *Or. Pub. Emps. Ret. Fund v. Apollo Grp.*, 774 F.3d 598, 608 (9th Cir. 2014); *Align*, 856 F.3d at 620; and *Vantive*, 283 F.3d at 1088, each of which rejected similarly vacuous CW allegations about meetings and reports. *Accord Endologix*, 2020 WL 3069776, at *10 (rejecting CW allegations about reports where the complaint did not "plead any details about these reports").

Plaintiffs misplace their reliance on *In re Quality Systems, Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017), where the plaintiffs relied on CW allegations from, among others, the Chief Operating Officer of the company and the Chief Information Officer of one of the company's divisions. *Id.* One of these CWs described—based on personal knowledge as a member of the executive team—the individual defendants' access to specific reports, the contents of those reports, and conversations he or she had with an individual defendant based on those reports. *Id.* at 1139, 1145. Another CW described specific relevant admissions *by an individual defendant* that occurred on conference calls that the CW *personally attended*. *Id.* at 1139.

### B.    The Core Operations Theory Does Not Apply.

Plaintiffs' only argument for invoking the "Core Operations Doctrine" is that "There can be no dispute that PAS and PKS were the Company's principle [sic] products and that Defendants would have been made aware of sales cycle delays and increased competition." (Opp. 14-15.) In other words: the Company had products, therefore the Executive Defendants knew everything about those products and intended to deceive. Plaintiffs' logical and speculative leaps do not support any inference of scienter, let alone a strong one.

The core operations theory only allows a court to infer a defendant's knowledge of a fundamental fact bearing on core operations where it would be "absurd to suggest" the defendant did not know that fundamental fact. In *Berson*, it was stop-work orders that caused production to stop, and turned a factory into a "ghost town." 527 F.3d at 982, 988 n.5. In *Mulligan v. Impax Labs, Inc.*, 36 F. Supp. 3d 942, 970 (N.D. Cal. 2014) (Opp. 14), it was seven notices and warnings from the FDA regarding quality control issues affecting the company's manufacturing facility. Unlike *Berson* and *Impax*, there are *no* facts alleged—let alone prominent facts—that would allow the Court to infer fraudulent intent here.

### C.    Plaintiffs Do Not Offer a Cogent and Compelling Theory of Fraud.

Plaintiffs' Complaint offers no cogent and compelling theory of fraud. What was the point? Why did they do it? Who benefitted? Plaintiffs offer no theory of fraud, much less one that "makes sense." *Endologix*, 2020 WL 3069776, at *8 (affirming dismissal: "The theory does not make a whole lot of sense. It depends on the supposition that defendants would rather keep

the stock price high for a time and then face the inevitable fallout once Nellix's 'unsolvable' migration problem was revealed.").

"If defendants had sought to profit from this scheme in the interim, such as by selling off their stock or selling the company at a premium, the theory might have more legs." *Id.* But as in *Endologix*, there are no stock sales here. Plaintiffs dodge the point that "lack of stock sales can detract from a scienter finding," and the Ninth Circuit cases that so hold. *Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018); *Rigel*, 697 F.3d at 884-85. The Opposition counters that the lack of stock sales is not "dispositive." (Opp. 15:8.) Defendants never argued that it was.

Plaintiffs also misstate Defendants' argument about Pivotal meeting its guidance. (Opp. 15.) Defendants showed that Pivotal met or exceeded its guidance every quarter of the Class Period while also increasing its revenue and customer base. At the end, it lowered its going-forward guidance (i.e., for the duration of the year *after* the Class Period). (MTD at 14-15.) Pivotal updated investors with a new forecast. The securities laws do not function to hold executives liable "every time the stock market digested a new forecast that resulted in a steep fall in a company's stock price." (MTD 15:2-3; *In re Lexar Media Sec. Litig.*, 2005 WL 1566534, at *3 (N.D. Cal. July 5, 2005).) Plaintiffs ignore *Lexar* and its rejection of fraud-by-hindsight claims based on nothing but a stock-drop following a forecast update.

## IV.    PLAINTIFFS' SECTION 12(a)(2) CLAIM FAILS FOR ANOTHER REASON.

No Plaintiff in this matter has standing to pursue the § 12(a)(2) claim, an additional ground for dismissal of that claim. (MTD 15.) Citing Plaintiffs' declarations on file in this matter, Defendants showed that Oklahoma City—the only Plaintiff to bring this claim—purchased its shares in the secondary market (not from any Defendant), precluding Section 12(a)(2) standing. (*Id.*)

Plaintiffs do not recant their declaration on this fact, and do not attempt to argue that they are not bound to this conclusion under *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1081 (9th Cir. 1999), and *Norfolk Cty. Ret. Sys. v. Solazyme, Inc.*, 2016 WL 7475555, at *4 (N.D. Cal. Dec. 29, 2016). Rather, Plaintiffs' only response—in a footnote—is that the Court has already found that Oklahoma City has standing to pursue the § 11 claim. (Opp. 8 n.10.) That misses the

point.  The Court's finding as to § 11 standing is not applicable to § 12(a)(2) standing.  As Defendants' authority—and the statutory text—shows, unlike § 11, § 12(a)(2) imposes an express privity requirement.  *Hertzberg*, 191 F.3d at 1081.  Because Oklahoma City purchased in the secondary market, there is no privity with Defendants.  Oklahoma City thus lacks standing.[10]

## V.      PLAINTIFFS' CONTROL-PERSON CLAIMS FAIL.

Plaintiffs' control-person claims under §§ 15 and 20(a) should be dismissed because Plaintiffs have failed to plead a predicate securities law violation.  *Rigel*, 697 F.3d at 886. Plaintiffs have also failed to plead specific facts establishing that Defendant Dell exercised a "significant degree of day-to-day operational control" over Pivotal, as required.  *In re McKesson HBOC Secs. Litig.*, 126 F. Supp. 2d 1248, 1277 (N.D. Cal. 2000) (ignored by Plaintiffs).

## VI.     CONCLUSION

For the foregoing reasons, the Court should grant the Motion without leave to amend.

Dated:  June 19, 2020                                    MORRISON & FOERSTER LLP

By: */s/ Mark R.S. Foster*

Attorneys for the Pivotal Defendants

---

[10]  The Opposition and cited cases address an entirely different and irrelevant question—"who is a proper defendant?"  By contrast, the Complaint's failing is that there is no proper plaintiff under § 12(a)(2).  Plaintiffs would have to show that the "solicitation" activity allegedly undertaken by Defendants was somehow aimed at causing Oklahoma City's individual secondary-market purchase, and that Defendants undertook solicitation activities motivated by personal gain from these secondary-market purchases.  This is an impossible task.