Pages 1 – 11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

IN RE PIVOTAL SECURITIES LITIGATION.   ) NO. 19-CV-03589 CRB
_____ )

San Francisco, California
Friday, July 17, 2020

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**: (By Zoom Webinar)

For Movant Oklahoma City Employee Retirement System:
          LABATON SUCHAROW LLP
          140 Broadway
          New York, New York 10005
      **BY:  CHRISTINE M. FOX, ESQ.**
          **CAROL C. VILLEGAS, ESQ**.

For Underwriter Defendants:
          LATHAM & WATKINS LLP
          555 Eleventh Street, N.W.
          Suite 1000
          Washington, D.C.  20004-1304
      **BY:  GAVIN MASUDA, ESQ.**
          **ANDREW B. CLUBOK, ESQ.**

For Pivotal Software, Inc.  Defendants:
          MORRISON & FOERSTER LLP
          425 Market Street Suite 3500
          San Francisco, California  94105-2482
      **BY:  JORDAN ETH, ESQ.**

Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
          Official Reporter, U.S. District Court

**Friday - July 17, 2020**                                        **11:01 a.m.**

**P R O C E E D I N G S**

THE CLERK:  Calling Civil Action C-19-3589, In Re Pivotal Securities Litigation.  Counsel, please state your appearances for the record.

MS. FOX:  Christine Fox from Labaton Sucharow on behalf of the lead plaintiffs and the proposed class.

THE CLERK:  And just one moment.  I'm going to begin the recording.  But again, we do have a court reporter, and that's the official transcript.

Continue on, thank you.

MS. VILLEGAS:  Carol Villegas from Labaton Sucharow on behalf of lead plaintiffs and the class.

MR. ETH:  Jordan Eth, good morning.  For Pivotal, the Pivotal defendants.

MR. MASUDA:  Good morning, Your Honor.  Everyone, good morning.  Gavin Masuda, Latham & Watkins, LLP, for the underwriters defendants.  And also partner Andrew Clubok from Latham & Watkins for the same defendants.

THE COURT:  Good.  Good morning, everyone.  Can you hear me?

MR. ETH:  Yes.

THE COURT:  I apologize that we had a technical glitch in terms of the video, but I can see you.  Maybe I'm at a great advantage.  I can see you and you can't see me.  But

you can hear me, and I can both see and hear you.

So, thank you very much for agreeing to participate.  I'm sorry for the time delay as well.  But we tried to work out some issues.

All right.  So, this is on, essentially on the motion to dismiss with respect to the pleadings, and whether there's been a requisite showing of scienter with respect to this.

Does anyone wish to add anything to the papers that have been filed?

Does the plaintiff want to add or --

**MS. FOX:**  Sure, Your Honor.

**THE COURT:**  Ms. Fox, go ahead.

**MS. FOX:**  Certainly.  Thank you.

I think the briefs for both sides pretty well summed up the arguments of both parties, but I do have a few clarifications that I would like to make, based on arguments advanced by the defendants in their reply brief.

First, the defendants claim that plaintiffs have abandoned some arguments or statements because we did not address all 62-plus of the statements in our 15-page opposition brief, and that therefore, we are only standing on the examples that we put forward in the brief.  And I would like to strenuously dispute that point.

With respect to all of the statements alleged to be false and misleading in the complaint, we continue to believe that

all of the statements are actionable.  And if Your Honor would like us to go through the statements one by one, we can do that.  But I just want it to be clear on the record that we are disputing that point.

The second clarification that I would like to make is that the defendants argue in their reply brief that there is no proper plaintiff for the claim under the Section 12(a)(2) of the Securities Act.  Here, lead plaintiff, Oklahoma City Retirement System, has alleged that it purchased shares traceable to the IPO, that each of the individual defendants was an officer or director of Pivotal at the time, and that they signed the registration which contained the material misrepresentations.

Plaintiffs also allege that the executive and director defendants who signed the offering materials were financially motivated to serve their own financial interests.  At this stage of the proceedings, Your Honor, that is enough.  Should it become apparent after a full factual record that plaintiffs cannot prove purchases from these particular defendants, defendants will have an opportunity to seek a judgment as a matter of law on that claim.

Third, defendants argue that plaintiffs have also conceded that the risk disclosures which they have copied into what they have appended as Appendix B to their motion, that those are inactionable statements.  Plaintiffs allege that with respect

to those exact risk disclosures, that at the time the risk disclosures were made, that the risks had already materialized, so they were, in fact, actionable statements.

And finally, plaintiffs disagree with the defendants' continued reference to the seven confidential witnesses as low-level employees who were not in a position to know the information that they provided to plaintiffs, or alternatively, that plaintiffs have not described those seven CWs with enough particularity.

I'm happy to go through each of the seven witnesses, their positions, and what they told us, if the Court would like a reminder about what that is.

Plaintiffs have -- with respect to those witnesses, plaintiffs have identified reports and meetings and other information that the defendants possessed at the time they made the allegedly false and misleading statements.

**THE COURT:**  Okay.  Thank you, Ms. Fox.

Mr. Eth, do you want to respond?

**MR. ETH:**  Yes, I do.  Thank you very much.

So the first point is that while we of course agree that scienter is important, what's even more fundamental here is falsity.  I don't think we even have to get to scienter, although plainly, our view is that plaintiffs haven't pleaded it.  Falsity cuts across all claims.  And there's nothing here, any claim on the falsity ground.  And we think that's plain

from looking at the allegations which we believe are, as we've argued, conclusory, vague, and mushy.

*Vantive* is right on point.  Plaintiffs bury that in a footnote.  We put that in our opening brief and in our reply brief.  And we think that all that the confidential witnesses say and that all that the complaint ultimately says is a statement of the obvious about how any business operates.  So that's Point 1.  We think it's about falsity.  Scienter, of course, as well, but falsity is key.

Second, on 12(2) (sic), this is an ancillary point that counsel just brought up.  We think that the Ninth Circuit case *Dignity Partners* is directly on point.  Traceability is not the issue.  The issue is whether the stock was purchased on the secondary market.  We have cited to the *Dignity Partners* Ninth Circuit case.

In terms of risk disclosures, the 40-pages-plus of risk disclosures are Appendix B.  They are -- also, there's nothing false about any of them.  What the CWs do is they say things like:  There was increasing competition from companies like Amazon and Google and Microsoft.  And our disclosures say there's competition from Google and Microsoft and Amazon.  So, there's nothing in the CWs.

I would also be happy to walk through them step by step, because they don't amount to anything other than things like: I heard talk in the office about competition.  Well, of course,

there was talking in the office about competition.

Or, they received reports and meetings -- and they attended meetings.  Of course, executives received reports and attended meetings.  But there's no specificity on anything.  So that's why we believe that falsity, as well as scienter, are grounds for dismissal.

And if the Court has questions --

**THE COURT:**  No, I wanted to ask Ms. Fox.

Now, if I -- if I -- if I accept the defendants' argument at least as to scienter, that there hasn't been an adequate showing of scienter, do you believe that you could amend around that?  And that is, that you could -- that there are additional facts that you could plead that would demonstrate scienter?

And I assume it means whichever, you know, claim we're talking about.  I understand that.  But are there claims -- are there facts out there that you haven't alleged, that if given the opportunity you feel you could cure, as long as the Court identifies for you the -- what it believes to be the shortcomings?

And I'm not asking you to admit that there are shortcomings.  I'm simply saying that I want to look at it and try to figure out, if I do accept at least some of the arguments that are made by the defense here, would you be able to -- would you -- would you be able to amend in a way that may cure those defects?

Somewhat theoretical.  You know.  I'm asking you where you are in your process and where -- what knowledge you have that you could then put into a -- you know, a complaint.

MS. FOX:  Sure, Your Honor.

Respectfully, I disagree with defendants' counsel about the particularity of the meetings and the reports.  But if Your Honor was so inclined to find that we had not yet adequately alleged scienter and identified what type of information the Court was looking for with respect to those meetings and those reports, then we would certainly endeavor to add additional allegations regarding scienter.

THE COURT:  Okay.  Is there anything further that the parties wish to address?

MR. MASUDA:  Your Honor, if I may, Gavin Masuda again for the underwriter defendants.  And I won't, obviously, repeat anything that's already been said.

I will say, though, Your Honor, very briefly, I do think the Court is right to recognize that scienter is an important issue in this case, for plaintiffs have pled a unified course of fraudulent conduct across the entire complaint.  And we think that does -- Your Honor, we agree with Mr. Eth and with the Pivotal defendants that the complaint also fails on falsity grounds, as well.

But the pleadings of scienter and of fraud are important with respect to the Section 11 claims that our clients have

been sued under.  And that is, as the Court knows, plaintiffs cannot simply plead around their fraud allegations and attempt to avoid Rule 9(b) as to the Section 11 claims.

And so we do believe, Your Honor, setting aside whatever the Court decides to do with respect to the scienter allegations on the 10(b) claims, the complaint does continue to plead -- fail to plead falsity as to the registration statement.

And just a second very brief point, Your Honor, on the Section 11 claims is that, you know, we submit that as the Court is looking at the allegations wholistically, timing is really important here.  You've got a 14-month class period.  The IPO was in April of 2018.  And a corrective disclosure in this case was 14 months later, in Jun Of 2019.

We think that a fair read, any plausible read of the sequence of events here renders wholly implausible under 9(b) or Rule 8, Your Honor, that anything disclosed in that June 2019 disclosure somehow indicates the falsity of the IPO registration statement 14 months ago.

Thank you, Your Honor.

**THE COURT:**  Thank you.  Anything else?

**MS. FOX:**  Your Honor, may I just --

**THE COURT:**  Ms. Fox.  Yes, of course.

**MS. FOX:**  May I address Mr. Masuda's point?

**THE COURT:**  Yeah.

**MS. FOX:**  I think Mr. Masuda is making the point that he disagrees with our contention that the Securities Act claims do not sound in fraud.

Plaintiffs have taken care to disclaim any allegations of fraud with respect to those Securities Act claims.  There's no allegations of an intentional conduct.  We have separated out the claims.  If Your Honor looks at how the complaint is organized, we have not alleged a unified course of conduct, which is what the cases require on this point.  Therefore, Rule 8 and not Rule 9(b) applies to the Securities Act claims.

With respect to the length of the class period, I will say that the CWs that we have identified in the complaint talk about knowledge that was had from the beginning of the class period, and even before the IPO in April of 2019.  So while it is a 14-month class period, those CWs are talking about what was known at the company before April of 2018, before the registration statement was signed by the underwriters and the other defendants.

**MR. MASUDA:**  Your Honor, what Ms. Fox just referenced, knowledge, internal knowledge at the company about things that are happening before the IPO, these are exactly the -- the allegations that constitute fraud.

In plaintiffs' opening brief, the very first sentence says that the complaint sets forth a straightforward narrative of defendants' fraudulent conduct beginning before the IPO.  And

so against that, Your Honor, the Ninth Circuit has long recognized that nominal attempts to disclaim fraud are -- can be disregarded and should be disregarded by the Courts.  More recently, in *In Re Rigel* and also in the *Rubke* case that we cite in the papers.

THE COURT:  Okay.  Thank you very much.  Submitted, and I will issue an opinion.  Thank you.  Appreciate it.

MS. FOX:  Thank you, Your Honor.

MS. VILLEGAS:  Thank you, Your Honor.

THE COURT:  Stay safe.

(Proceedings concluded)

**CERTIFICATE OF REPORTER**

I, BELLE BALL, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Belle Ball

Belle Ball, CSR 8785, CRR, RDR

Monday, July 20, 2020